**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| Kamron Gibson Brown, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| Richland County; Crystal Ragin in her individual capacity; Kevin McCullough in his individual capacity; and John Doe Detention Officer in his individual capacity; | ) ) ) ) | C/A No: |
| | ) | |
| Defendants. | ) | |

Plaintiff Kamron Gibson Brown (hereinafter "Plaintiff"), by and through his undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Richland County (hereinafter "Defendant County" or "Richland County" or "County"), and Crystal Ragin ("Defendant Ragin"), Kevin McCullough ("Defendant McCullough"), and John Doe Detention Officer ("Defendant John Doe") (collectively hereinafter "the Individual Defendants").

**PARTIES**

1. Plaintiff Kamron Gibson Brown is a citizen of South Carolina and resides in Lexington County.

2. Richland County is a county in South Carolina which owns and operates the Alvin S. Glenn Detention Center ("ASGDC").

3. Upon information and belief, Defendant Crystal Ragin is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. She is being sued in her individual capacity.

4. Upon information and belief, Defendant Kevin McCullough is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

5. Upon information and belief, Defendant John Doe Detention Officer is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the state claims against Defendants pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

8. This Court has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

9. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as most of the Defendants reside in this District and the acts or omissions complained of occurred within this District.

## FACTUAL ALLEGATIONS

10. On November 6, 2020, Plaintiff was arrested and charged with several crimes before being booked into Alvin S. Glenn Detention Center.

11. On or about June 22, 2022, Plaintiff was being housed in the H "Hotel" dorm at the ASGDC.

12. Richland County routinely short staffed the ASGDC of detention center officers and personnel to such an extent that it adversely impacted its ability to serve the inmate population in the H dorm and elsewhere throughout the jail.

13. Upon information and belief, Defendant Richland County and the Individual Defendants had knowledge of numerous stabbings occurring in the ASGDC perpetrated by detainees with contraband weapons.

14. However, upon information and belief, Defendants routinely failed to search detainees for contraband weapons, which Defendants had reason to believe were frequently smuggled into the facility by employees or fashioned within ASGDC by detainees.

15. Upon information and belief, the H dorm was on lockdown on June 22, 2022.

16. Upon information and belief, the H dorm was placed on lockdown as a result of an incident that occurred in the dorm the day before.

17. During the early morning hours of June 22, 2022, Plaintiff was walking to get a breakfast tray when another detainee, Phillip Waller, attacked him from behind with a sharp object.

18. Upon information and belief, despite the H dorm being placed on lockdown, Defendants Ragin and John Doe Detention Officer opened all of the cells simultaneously to allow the detainees to get breakfast.

19. Upon information and belief, Phillip Waller was a federal detainee who should not have been housed in the H dorm.

20. Upon information and belief, Phillip Waller's cell had been searched the day before, but Waller still had access to the sharp object he used to stab Plaintiff.

21. Upon information and belief, Phillip Waller stabbed Plaintiff seven (7) to eight (8) times, causing injuries to Plaintiff's arm, back, shoulder, and head.

22. Upon information and belief, there were two (2) detention officers in the H dorm at the time of the attack: Defendant Ragin and Defendant John Doe Detention Officer.

23. Upon information and belief, neither Defendant Crystal Ragin nor Defendant John Doe intervened while Plaintiff was being attacked.

24. Rather, upon information and belief, Defendant Ragin called for assistance while Plaintiff was being stabbed.

25. Upon information and belief, Defendant Ragin opened the door to exit the pod and did not try to stop Phillip Waller as he exited the pod.

26. Following the attack, detention officers took Plaintiff to the medical unit and attempted to call for medical assistance, but there was no medical staff on the premises at that time.

27. Detention officers then called an ambulance and moved Plaintiff to the intake area, where he sat bleeding out until EMS arrived.

28. Plaintiff was then transported to the hospital for treatment of his injuries, which included a fractured skull and a stab wound to an artery in Plaintiff's arm.

29. While in the hospital, Plaintiff underwent a CT scan which revealed that the artery in his arm was still bleeding. Based on this scan, one of Plaintiff's treating physicians determined that Plaintiff's wound should not be stitched. Nevertheless, approximately twenty (20) minutes later, another physician entered Plaintiff's room and stitched up the wound to Plaintiff's arm. Plaintiff's other wounds were also stitched up.

30. Because the artery in Plaintiff's arm was still bleeding, Plaintiff's arm began to swell, causing Plaintiff to experience numbness. Plaintiff ultimately required surgery to repair the damage to his arm.

31. Following the surgery, Plaintiff remained in the hospital for five (5) days.

32. Upon information and belief, Plaintiff was not allowed to make phone calls or otherwise communicate with anyone regarding his injuries and subsequent hospitalization.

33. Following his surgery and hospitalization, Plaintiff was returned to the ASGDC.

34. Upon information and belief, at the time he returned to the ASGDC, Plaintiff had roughly 20 stitches and several open wounds.

35. Upon information and belief, despite the presence of stitches and open wounds, Plaintiff went days without having his wounds cleaned or his bandages changed by the medical staff.

36. Upon information and belief, Plaintiff was isolated in a cell and told that he could not come out.

37. Upon information and belief, while confined to this cell, Plaintiff did not have his wounds treated or his bandages changed, and Plaintiff was not provided with clean sheets, towels, or washcloths.

38. Because Plaintiff did not receive proper wound care from the ASGDC medical staff, Plaintiff was forced to wrap his wounds in toilet paper.

39. Upon information and belief, Plaintiff brought the lack of medical attention, wound treatment, bandages, and clean linens to the attention of Defendant Kevin McCullough, but the situation was not rectified.

40. Upon information and belief, Plaintiff was consistently denied pain medication, despite experiencing numbness and pain in his arm and head.

41. In an attempt to obtain some relief from the conditions described above, Plaintiff made numerous calls to his family and asked them to speak to the ASGDC administration and staff.

42. Upon information and belief, the ASGDC staff removed half of the stitches in Plaintiff's arm. However, upon information and belief, Plaintiff's wound burst open because the stitches were removed too early.

43. Since his attack, Plaintiff has suffered from nightmares, cold sweats, memory loss, PTSD, and nerve dysfunction.

44. Moreover, upon information and belief, Plaintiff was subsequently harassed, humiliated, threatened, and otherwise mistreated by the ASGDC staff.

45. Despite his previous complaints about his needs which were not addressed, any further attempt at exhaustion of administrative remedies would be futile, as Plaintiff was released in March of 2023.

**FOR A FIRST CAUSE OF ACTION**
**Unconstitutional Conditions of Confinement – Safety & Welfare**
**in Violation of the Fourteenth Amendment**
(*against Defendant Ragin and Defendant John Doe Detention Officer*)

46. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

47. These Defendants had an affirmative duty to provide for the basic needs of persons, including the safety and welfare of individuals in their custody and care, including Plaintiff.

48. These Defendants had knowledge of a significant number of stabbings at the ASGDC and still failed to make efforts to ensure Plaintiff's safety and welfare.

49. Plaintiff was in the H dorm when he was stabbed by a federal detainee who, upon information and belief, should not have been housed in the H dorm for security reasons, and while Defendant Ragin and Defendant John Doe wholly failed to remove the federal detainee and intervene or otherwise attempt to stop the attack on Plaintiff.

50. The conduct and actions of the Individual Defendants, acting under color of state law, in failing to protect Plaintiff from the attack, were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

51. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

52. These Defendants are liable to Plaintiff for the foregoing deprivations of his Constitutional rights.

**FOR A SECOND CAUSE OF ACTION**
**Unconstitutional Conditions of Confinement – Safety & Welfare**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York**
(*against Defendant Richland County*)

53. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

54. Defendant Richland County has an affirmative duty to provide for the safety and welfare, as described in Count I, of individuals in its custody and care, including Plaintiff.

55. Plaintiff is aware of numerous other violent attacks and stabbings at the ASGDC both before and after his stabbing.

56. Defendant Richland County was also aware of the numerous other violent attacks and stabbings.

57. The facts as stated above, as well as the existence of numerous other similar incidents, demonstrate a pattern and practice by Defendant Richland County of understaffing its facility such that detainees are routinely exposed to harm from violent detainees, and are routinely attacked without intervention from detention center staff.

58. Plaintiff was a detainee being housed in the H dorm at the time of his attack. Plaintiff's assailant was a federal detainee who was improperly housed in the H dorm. Upon information and belief, and due to chronic overcrowding and understaffing of the ASGDC, federal detainees are routinely housed in dorms not designated for federal detainees.

59. Notwithstanding Defendant Richland County's knowledge that federal detainees should not be housed with detainees in the H dorm, Defendant Richland County allowed such a detainee into the dorm anyway based upon this normal pattern and practice.

60. Upon information and belief, Defendant Richland County engaged in a pattern and practice of failing to perform appropriate inspections of inmate cells and common areas to discover contraband weapons despite Defendant Richland County's explicit knowledge that detainees possess weapons that are used to perpetrate significant harm upon other detainees such as Plaintiff.

61. Further, upon information and belief, Defendant Richland County engaged in a pattern and practice of failing to appropriately staff the ASGDC in order to both prevent detainees from being attacked and to maintain staffing which would enable them to intervene when the Plaintiff was repeatedly stabbed in the presence of two detention officers.

62. The conduct and actions of Defendant Richland County, acting under color of state law, in failing to segregate federal detainees from the H dorm and other non-federal detainees,

failing to inspect cells and confiscate contraband weapons known to be in the possession of detainees, failing to intervene as Plaintiff was stabbed repeatedly were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused injury and suffering.

63. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

64. Defendant Richland County is liable to Plaintiff for the foregoing deprivation of his Constitutional rights based upon these improper patterns and practices.

**FOR A THIRD CAUSE OF ACTION**
**Unconstitutional Conditions of Confinement – Clean Linens**
**in Violation of the Fourteenth Amendment**
(*against Defendant McCullough*)

65. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

66. Defendant McCullough had an affirmative duty to provide for the basic needs of persons, including Plaintiff, to include clean linens to prevent infection or other diseases.

67. Defendant McCullough had knowledge of Plaintiff's stab wounds.

68. Defendant McCullough further had knowledge of Plaintiff's lack of clean linens in his cell as he convalesced from his injuries there rather than in medical because Plaintiff specifically informed him of this issue.

69. Defendant McCullough had knowledge of all of the foregoing and still failed to make efforts to ensure Plaintiff had proper conditions in his cell, demonstrating a deliberate indifference to Plaintiff's Constitutional rights.

70. The conduct and actions of Defendant McCullough, acting under color of state law, in failing to provide clean linens as he healed from his stabbing and surgery, were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

71. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

72. Defendant McCullough is liable to Plaintiff for the foregoing deprivations of his Constitutional rights.

**FOR A FOURTH CAUSE OF ACTION**
**Unconstitutional Conditions of Confinement – Clean Linens**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York**
(*against Defendant Richland County*)

73. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

74. Defendant Richland County has an affirmative duty to provide clean linens, as described in the Fourth Cause of Action, to individuals in its custody and care, including Plaintiff.

75. Plaintiff is aware of numerous other instances of Defendant Richland County failing to provide basic clean conditions at the ASGDC both before and after his stabbing.

76. Defendant Richland County was also aware of the chronic failure to provide clean conditions at the ASGDC, including the issue of lack of regular provision of clean linens.

77. The facts as stated above, as well as the existence of numerous other similar incidents, demonstrate a pattern and practice by Defendant Richland County of understaffing its

facility such that detainees are routinely exposed to harm from harm due to infection and disease caused by the failure to provide clean linens.

78. Upon information and belief, due to chronic overcrowding and understaffing of the ASGDC, detainees are routinely housed in cells without clean linens, specifically including those who are left there to convalesce from injuries and surgeries rather than being housed in medical.

79. Notwithstanding Defendant Richland County's knowledge of the regular failure to provide clean linens, it declined to provide them to Plaintiff upon his request based upon this normal pattern and practice.

80. The conduct and actions of Defendant Richland County, acting under color of state law, in failing to provide clean linens as a matter of course in the ASGDC, and in failing to respond to requests for the same by detainees like Plaintiff, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused injury and suffering.

81. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

82. Defendant Richland County is liable to Plaintiff for the foregoing deprivation of his Constitutional rights based upon these improper patterns and practices.

### FOR A FIFTH CAUSE OF ACTION
### Deliberate Indifference to Serious Medical Needs
### in Violation of the Fourteenth Amendment
### (*against the Individual Defendants*)

83. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

11

84. The Individual Defendants had an affirmative duty to provide Plaintiff with adequate medical care for serious medical needs during his confinement.

85. Following the attack, Plaintiff did not receive immediate treatment because the ASGDC had no medical staff present on the premises.

86. Following his surgery and hospitalization, Plaintiff was left to convalesce in his cell rather than in medical without receiving any wound care, despite specifically notifying Defendant McCullough of his need for treatment, clean bandages, and supplies.

87. Moreover, Plaintiff's arm wound was reaggravated due to the removal of the stitches by individual ASGDC staff before the wound had adequately healed and amid unclean conditions in his cell due to lack of clean linens.

88. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

89. The conduct and actions of the Individual Defendants, acting under color of state law, in failing to provide Plaintiff access to adequate medical care constitute deliberate indifference and/or reckless disregard for Plaintiff's serious medical needs, and caused needless injury and suffering.

90. The Individual Defendants' deliberate indifference to Plaintiff's serious medical needs constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

91. The Individual Defendants are liable to Plaintiff for this deprivation of rights.

**FOR A SIXTH CAUSE OF ACTION**
**Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment and**
**<u>Monell v. Department of Social Services of City of New York</u>**
(*against Defendant Richland County*)

92. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

93. Defendant Richland County had an affirmative duty to provide Plaintiff with reasonable access to adequate medical care for his serious medical needs during his confinement.

94. Upon information and belief, numerous other detainees at the ASGDC have experienced a failure by Defendant Richland County to adequately provide for medical care in deliberate indifference to other individuals' serious medical needs.

95. The facts of this case, and other known incidents, demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

96. The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by Defendant Richland County of understaffing its facility such that detainees are routinely prevented from being examined or treated by medical staff and from being transported for outside medical care when necessary.

97. The conduct and actions of Defendant Richland County, acting under color of state law, in failing to provide Plaintiff access to adequate medical care constitutes deliberate indifference and/or reckless disregard for Plaintiff's serious medical needs, and caused needless suffering and further injury.

98. This failure to provide Plaintiff access to adequate medical care constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

99. Defendant Richland County is liable to Plaintiff for this deprivation of his Constitutional rights.

**FOR A SEVENTH CAUSE OF ACTION**
**Gross Negligence**

**(*against Defendant Richland County*)**

100. Plaintiff repeats and realleges the factual allegations contained in paragraphs 1-45 as if fully restated herein.

101. This is an action for gross negligence brought against Defendant Richland County under the laws of the State of South Carolina.

102. This cause of action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code § 15-78-10, *et seq.*

103. At all times relevant to this complaint, the Individual Defendants and other detention staff at the ASGDC were employees and/or agents of Defendant Richland County, which funds the ASGDC and manages it pursuant to authority vested in it by the Richland County Sheriff[1], and were acting within the course and scope of their employment, in furtherance of the interests of Defendant Richland County, and with Richland County's knowledge and consent.

104. Defendant Richland County is liable for the actions and omissions of its employees and/or agents that gave rise to this action including the actions of the Individual Defendants.

105. Defendant Richland County by and through its employees and agents, owed a duty to Plaintiff, including the special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety in the following particulars, to wit:

    a. to properly staff its facility;

    b. to prevent attacks by other detainees;

    c. to enforce its own policies with respect to the possession of contraband and the search for and removal thereof;

    d. to intervene during attacks on their premises.

---

[1] S.C. Code Ann. §24-5-10, et seq.

106. Defendant Richland County also owed ministerial duties in the following particulars, to wit:

   a. to provide responsible and effective operations of the ASGDC;

   b. to establish proper policies, customs, and regulations of the ASGDC.

   c. to supervise its detention staff;

   d. to discipline said staff and only retain those persons fit for duty;

   e. to properly train and retrain said staff;

   f. and to properly correct and remediate any known deficiencies within its staff or within the ASGDC.

107. Upon information and belief, prior to the incident involving Plaintiff, Defendant Richland County and the Individual Defendants had customs or policies of the following, which upon information and belief still exists at this time:

   a. understaffing the ASGDC,

   b. failing to screen detainees for contraband or jail-fashioned weapons,

   c. failing to appropriately classify federal detainees and segregate federal detainees from non-federal detainees in the H dorm and elsewhere throughout the facility,

   d. failing to have medical staff on the premises at all times,

   e. failing to provide a sanitary environment for detainees, and

   f. failing to properly train, retrain, supervise, and discipline detention staff including the Individual Defendants.

108. The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of the ASGDC, including Plaintiff.

109. As such, Defendant Richland County breached its duties including ministerial duties owed to Plaintiff.

110. Defendant Richland County's failure to reprimand and intervene and/or take corrective action against its detention staff or within the ASGDC is evidence that Defendant Richland County ratified and promulgated staff misconduct and the conditions inside the ASGDC, and provides further evidence of its breach of duties owed to detainees housed at the ASGDC, including Plaintiff.

111. Upon information and belief, in the years prior to the incident involving Plaintiff, despite knowledge of weapons within the ASGDC and violence between detainees, Defendant Richland County never reviewed, or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques to eradicate or even mitigate the threat posed by violent detainees.

112. Defendant Richland County's continued and repeated failure to adequately staff the ASGDC with detention officers and medical staff, to appropriately classify federal detainees, to segregate dangerous detainees from the H dorm, to take basic steps to prevent attacks on detainees by other detainees, to intervene in such attacks, and to maintain on-site access to immediate medical care resulted in the Individual Defendants breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Plaintiff by allowing him to be attacked by a federal detainee, in failing to intervene, and in failing to timely provide Plaintiff with adequate medical attention to treat his injuries.

113. Defendant Richland County knew or should have known of the dangers posed by its failures illustrated in this Complaint, including failures to properly staff the ASGDC, failing to screen detainees for weapons, failing to maintain on-site medical staff, failing to prevent or

16

intervene in attacks by other detainees, and failing to properly train, re-train, and supervise its detention officers, and that said actions and inactions were reckless and or constituted the total absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

114. Defendant Richland County, by and through its duly authorized employees, owed a duty to Plaintiff to be reasonable in the management and conduct of the ASGDC. Defendant Richland County, by and through the Individual Defendants, breached duties owed to Plaintiff by failing to search or screen his attacker and ensure that he was appropriately classified and segregated from non-federal detainees in the H dorm and elsewhere throughout the facility, failing to intervene when Plaintiff was attacked and stabbed repeatedly, failing to provide Plaintiff with timely and appropriate medical care, and failing to provide Plaintiff with a sanitary environment in which to heal from his injuries.

115. Each act or omission detailed in this matter constitutes a separate occurrence.

116. Defendant Richland County's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff and actually and proximately contributed to and/or caused the severe injuries Plaintiff sustained.

117. Plaintiff is entitled to Judgment against Defendant Richland County for damages as to be determined by the triers of fact in this case.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c. Punitive damages as to those causes of action where they are available;

d. Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 23rd day of May, 2023.

                                        **STROM LAW FIRM, LLC**

                                        *s/ Bakari T. Sellers*
Bakari T. Sellers (SC Fed. ID # 11099)
Joseph Preston Strom (SC Fed. ID # 4354)
Mario A. Pacella (SC Fed. ID # 7538)
Amy E. Willbanks (SC Fed. ID # 13537)
Alexandra Benevento (SC Fed. ID # 10734)
Matthew B. Robins (SC Fed. ID # 13313)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
       petestrom@stromlaw.com
       mpacella@stromlaw.com
       awillbanks@stromlaw.com
       abenevento@stromlaw.com
       mrobins@stromlaw.com

*Attorneys for Plaintiff*